UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DEBORAH CABRAL,

       Plaintiff,

v.

                              Case No. 8:18-cv-1310-T-30TGW

ANDREW M. SAUL,
Commissioner of Social
Security Administration,[1]

       Defendant.

_____

REPORT AND RECOMMENDATION

       The plaintiff seeks judicial review of the denial of her claim for Social Security disability benefits.[2] Because the decision of the Commissioner of Social Security is supported by substantial evidence and the plaintiff has not identified any reversible error, I recommend that the decision be affirmed.

I.

       The plaintiff, who was sixty-five years old at the time of the administrative hearing and who has a high-school education, has worked as

---

[1]Andrew M. Saul became the Commissioner of Social Security on June 17, 2019, and should be substituted as the defendant. See Fed. R. Civ. P. 25(d).

[2]This matter comes before the undersigned pursuant to the Standing Order of this court dated January 5, 1998. See also M.D. Fla. R. 6.01(c)(21).

a collections clerk (Tr. 60-61, 216). She filed a claim for Social Security disability benefits in January 2015, alleging that she became disabled on April 13, 2013, due to chronic neck and back pain, complications from prior fusion surgeries, nerve damage, neuropathy, and hypertension (Tr. 200, 215). Her claim was denied initially and upon reconsideration.

At her request, the plaintiff then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff had severe impairments of "degenerative disc disease of the cervical and lumbar spine status post-surgeries at both levels with hardware with current radiculopathy; cervicalgia, and lumbago; status post-laminectomy, with diagnosis of post-laminectomy syndrome; chronic pain syndrome; osteoarthritis of the knees; peripheral neuropathy; [and] hypertension" (Tr. 15). He determined that, with these impairments, the plaintiff retained the residual functional capacity to perform a limited range of sedentary work (Tr. 16). Specifically, the law judge restricted the plaintiff to standing or walking thirty minutes at a time and a total of three hours in an eight-hour day; sitting six hours in an eight-hour day, and in addition to normal breaks must be allowed to stand for about one minute every fifteen minutes without leaving the workstation; can occasionally climb stairs and ramps, kneel, stoop and crouch; and must avoid concentrated exposure to vibration and extreme cold

(id.).   In view of those limitations, job descriptions in the Dictionary of Occupational Titles, and vocational expert testimony, the law judge determined that the plaintiff was able to perform her past relevant work as a collections clerk (Tr. 19).  The law judge therefore decided that the plaintiff was not disabled (Tr. 20).  The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. 423(d)(1)(A).   A "physical or mental impairment," under the terms of the Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."   42 U.S.C. 423(d)(3). The Act further provides that a claimant is not disabled if she is capable of performing previous work.  42 U.S.C. 423(d)(2)(A).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Under the substantial evidence test, "findings of fact made by administrative agencies . . . may be reversed . . . only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper

legal standards were applied and legal requirements were met. <u>Lamb</u> v.

<u>Bowen</u>, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff asserts the following two arguments:

1.      The residual functional capacity is not supported by substantial evidence because the ALJ failed to analyze all of the medical evidence.

2.      The finding that the plaintiff is not disabled is not supported by substantial evidence because the plaintiff met the 11th Circuit Pain Standard for determining disability.

(Doc. 16, p. 11). The arguments are not adequately developed and thus are unavailing.

Because symptoms such as pain are considered when assessing an individual's residual functional capacity, the plaintiff's "pain standard" issue is addressed first.

     A.     The plaintiff's "pain standard" contention is simply a summary of medical findings and her own testimony (Doc. 16, pp. 14-20). Notably, the plaintiff does not challenge the law judge's application of the pain standard. Nor does she acknowledge, let alone dispute, any of the law judge's several reasons for not fully crediting her subjective complaints (<u>see</u> Doc. 16, pp. 13-20). Consequently, she does not present a meaningful challenge to that determination.

The Scheduling Order and Memorandum required the plaintiff to "identify with particularity the discrete grounds upon which the administrative decision is being challenged," and to support her challenges with "citations to the record of the pertinent facts and by citations of the governing legal standards" (see Doc. 13, p. 2). See also Sanchez v. Commissioner of Social Security, 507 Fed. Appx. 855, 859 n.1 (11th Cir. 2013), quoting Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed."). The plaintiff's summary of medical findings and testimony does not meet those requirements. Therefore, the plaintiff's failure to develop a cogent argument regarding the law judge's evaluation of her subjective complaints appropriately deems the argument forfeited (see Doc. 13, p. 2). In all events, the argument is unavailing.

The Eleventh Circuit has established a standard for evaluating complaints of pain and other subjective complaints. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). As the court of appeals explained in Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "require[s] evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that

condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." If the law judge discounts the claimant's testimony concerning subjective complaints, he must articulate explicit and adequate reasons for doing so. Dyer v. Barnhart, supra, 395 F.3d at 1210.

The law judge appropriately applied the pain standard. Thus, the law judge first summarized the plaintiff's testimony:

> In reports made in connection with this application, the claimant alleged chronic neck and back pain, complications from prior spinal surgeries, nerve damage, neuropathy, and hypertension limit her ability to work (Exhibit 2E). The claimant described the pain as constant and lasting all day. She further alleged worsening pain with prolonged sitting, standing, and walking. She alleged the pain is relieved by lying down. She reported experiencing memory, concentration, and drowsiness from the medications (Exhibit 4E).

(Tr. 17). The law judge, applying the appropriate legal standard, then found that the plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,]" but that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision" (Tr. 17).

The law judge also referred to the pertinent regulation and Social Security Ruling (SSR) governing the assessment of subjective complaints, stating that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" (Tr. 16). This demonstrates that he applied the Eleventh Circuit's pain standard. <u>Wilson</u> v. <u>Barnhart</u>, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

Significantly, the law judge did not reject the plaintiff's subjective allegations outright. Rather, he determined that the plaintiff had various severe impairments related to her cervical and lumbar spine and past surgeries on both, including radiculopathy, as well as chronic pain syndrome, osteoarthritis of the knees, and peripheral neuropathy (Tr. 15). The law judge, moreover, substantially limited the plaintiff's residual functional capacity to a restricted range of sedentary work to accommodate the plaintiff's severe impairments (Tr. 16). Thus, he only rejected that the plaintiff's symptoms were disabling.

Further, the law judge provided adequate reasons for discounting the plaintiff's testimony that her impairments were debilitating and rendered her unable to work (Tr. 17-18):

> The claimant provided contradicting testimony at the hearing. Initially, she testified to [doing]

"nothing" at home all-day and lying in bed almost all day. Similarly, she testified she cannot walk even one city block or stand for more than ten minutes at a time. Yet, she later testified to going to the beach, where [she] spends approximately two hours in the sun and getting into the water. One could reasonably argue that the ability to go to the beach and into the ocean certainly requires more physical ability than generally testified to earlier in the hearing.

***

As for the claimant's statements about the intensity, persistence, and limiting effects of her pain, they are inconsistent with the objective evidence of record. While the objective imaging confirmed severe impairments, findings from physical examinations suggest fewer limitations than those alleged by the claimant. As described in detail above, MRI showed protrusions, herniation, stenosis and degenerative disc disease in the cervical and lumbar spine (Exhibits 2 and 9F). Thus, the undersigned finds it reasonable to limit the claimant to a reduced range of sedentary work activities. However, although doctors mentioned tenderness, reduced range of motion, and tender points in the spine, they further reported a normal gait, negative straight leg raising, full muscle strength, and normal sensory findings (Exhibits 1F-4F, 8F, 9F, and 11F). In that regard, one could reasonably argue the allegations of all day, every day pain are inconsistent with the complete lack of abnormal sensory findings. Likewise, one could reasonably expect to find evidence of muscle atrophy or wasting given the extreme allegations regarding the ability to sit, stand, or walk. Considering the claimant's testimony regarding spending most of the day in bed with limited physical exertion, one could reasonably expect to find evidence of muscle atrophy or wasting.

The longitudinal treatment history supports *some* of the claimant's allegations, but it fails to corroborate *all* of her allegations. The claimant did seek treatment from specialists throughout the period at issue and the doctors prescribed narcotic pain medications (Exhibits 1F-4F, 8F, 9F, and 11F). In light of this treatment, the undersigned finds it reasonable to limit the claimant to a reduced range of sedentary activities. However, the doctors did not recommend any additional invasive surgeries. Moreover, it does not appear the claimant sought treatment at the emergency room or hospital for exacerbated pain.

The undersigned has also considered the type, dosage, effectiveness, and side effects of any medication the claimant takes to alleviate pain or other symptoms. Although the claimant alleges side effects, the record contains few, if any, complaints of side effects to a medical source, and the undersigned concludes that any side effects are not so significant [that] they justify a further reduction of the claimant's residual functional capacity.

Although the representative added upper extremity limitations in a hypothetical presented to the vocational expert at the hearing, the undersigned finds the evidence fails to support those limitations. Doctors failed to note any significant abnormalities when examining the upper extremities during physical examinations. Rather, they specifically reported normal range of motion, good strength good tone, no numbness or tingling, no impingement signs, and no evidence of motor atrophy in the upper extremities (Exhibits 1F-4F, 8F, 9F, and 11F). Moreover, the claimant rarely, if ever, mentioned any significant upper extremities complaints during office visits. Thus, the undersigned finds no evidence to include

-10-

additional upper extremity limitations in the residual functional capacity assessment other than those considered within the lifting restrictions associated with sedentary work.

(Tr. 17-18).

These reasons are supported by substantial evidence. For example, although the plaintiff is correct in noting that Dr. Farhan Siddiqi (and Dr. Casey O'Donnell) reported that her pathological reflexes were "none," plantar reflexes were "absent," and left knee and ankle reflexes were "0" (see e.g., Tr. 296-97, 325, 329, 333, 338, 343, 351, 355, 359, 364-65, 370-71, 393, 397, 401, 460, 464, 468, 474, 478, 482), they also reported, as the law judge noted, that her gait and station was normal, she could heel/toe walk, a negative straight leg raising test bilaterally, and normal elbow/hand/wrist functioning (see e.g., Tr. 297, 301, 307, 312, 321, 325, 329-30, 333-34, 338-39, 343-44, 351-52, 355-56, 359-60, 365, 371, 393-94, 397, 401, 460-61, 464-65, 468-69, 474, 478-79, 482-83). Furthermore, Dr. O'Donnell noted an absence of muscle atrophy (see e.g., Tr. 301, 306, 312, 316, 321), Dr. Siddiqi noted an absence of weakness in the extremities (see e.g., Tr. 324, 329, 333, 338, 343, 351, 355, 359, 364, 370, 393, 396, 400, 460, 464, 468, 473, 478, 482), and none of the doctors who addressed the plaintiff's residual functional capacity opined that her impairments resulted

in functional limitations that would preclude the ability to work (see e.g., Tr. 95-99, 107-09, 411, 428, 437).

For these reasons alone, the law judge could reasonably find that, despite the plaintiff's substantial impairments and complaints of debilitating pain, her functioning was not so impaired that she could not do a limited range of sedentary work. See Belle v. Barnhart, 129 Fed. Appx. 558, 560 (11th Cir. 2005) (normal findings on examination are relevant to whether the plaintiff's allegations of debilitating impairments are credible); 20 C.F.R. 404.1529(c)(2) ("Objective medical evidence ... is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of [a plaintiff's] symptoms and the effect those symptoms ... may have on [a plaintiff's] ability to work."). Accordingly, substantial evidence supports the law judge's finding that the plaintiff could perform a limited range of sedentary work.

The plaintiff's approach in this point was merely to summarize findings of several medical records (see Doc. 16, pp. 14-17). The plaintiff does not, however, identify any medical findings or opinions which state or suggest that her impairments and allegations of debilitating pain resulted in greater permanent functional limitations than determined by the law judge. See Longworth v. Commissioner of Social Security, 402 F.3d 591, 596 (6th

Cir. 2005) (physician needs to translate how abnormal clinical findings affect functioning); see also Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) ("the claimant bears the burden of proving that [s]he is disabled").

Moreover, it is well established that "a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work." Wind v. Barnhart, 133 Fed. Appx. 684, 690 (11th Cir. 2005), quoting McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). In other words, it is the functional limitations that determine disability. Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005); McCruter v. Bowen, supra, 791 F.2d at 1547. The plaintiff does not explain how any diagnoses or findings on MRI created specific functional limitations beyond her already substantially reduced residual functional capacity. Therefore, the plaintiff's references to medical records do not compel a finding of disability.

In sum, with respect to the Eleventh Circuit pain standard, the law judge found that the plaintiff's impairment could reasonably be expected to cause the alleged symptoms, but that the plaintiff's statements concerning her symptoms are not consistent with the medical evidence and the evidence in the record (Tr. 17). This credibility finding was not adequately challenged

-13-

by the plaintiff. Thus, a reference to medical findings is not sufficient without a showing that those findings compel a conclusion that the plaintiff had functional limitations greater than determined by the law judge. Further, the plaintiff cannot overturn the law judge's credibility finding merely by citation to the plaintiff's testimony (Doc. 16, pp. 18-20). After all, the law judge found that that testimony was not entirely consistent with the record evidence.

B.     The plaintiff's argument about the residual functional capacity determination is that it is unsupported because the law judge did not (1) analyze all of the medical evidence, particularly the records from Trinity Spine Center and the findings on various MRIs, nor (2) consider all categories of evidence listed in SSR 96-8p (Doc. 16, pp. 11, 13). This argument fails as well.

As with her other argument, I note at the outset that the plaintiff does not acknowledge or challenge the law judge's consideration and weighing of the opinion evidence or his reliance, at least in large part, on that evidence when assessing her residual functional capacity (see Doc. 16, pp. 13-20). Furthermore, the plaintiff does not identify any specific limitation that the law judge should have, but failed to, include in his residual functional capacity determination. Consequently, she has not presented a cogent

-14-

challenge to that determination.  In all events, the argument is without merit.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. 404.1545(a)(1); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).  In assessing a claimant's residual functional capacity, the law judge considers, among other things, all of the relevant medical evidence, statements from doctors as to what a claimant can still do, and the claimant's statements about her impairments, including limitations that result from subjective symptoms such as pain. 20 C.F.R. 404.1545(a)(3).  The final responsibility for deciding a claimant's residual functional capacity is with the law judge. 20 C.F.R. 404.1546(c).

The law judge considered the entirety of the record in assessing the plaintiff's residual functional capacity, and substantial evidence supports his determination.  The law judge concluded that the plaintiff retained the functional capacity to perform sedentary exertional work[3] except:

> Standing and/or walking is thirty minutes at a time
> and a total of three hours in an eight-hour day;
> sitting is six hours in an eight-hour day, but in
> addition to normal breaks must be allowed to stand

---

[3]"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. 404.1567(a).

for about one minute every fifteen minutes, without leaving the workstation; the following are occasional: climbing stairs and ramps, kneeling, stooping, crouching; must avoid concentrated exposure to vibration and extreme cold.

(Tr. 16).

In assessing the plaintiff's residual functional capacity, the law judge stated that he had considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p," as well as the "opinion evidence in accordance with the requirements of 20 CFR 404.1527" (Tr. 16). Review of the decision reflects that the law judge complied with those requirements.

The law judge considered the plaintiff's subjective allegations of pain and resulting limitations, the plaintiff's daily activities, the longitudinal medical record, findings on exam, findings on MRIs, medical source statements on the plaintiff's residual functional capacity, and the type/dosage/effectiveness/side effects of medication (Tr. 16-19). Thus, contrary to the plaintiff's contention, the law judge appropriately considered the types of evidence listed in SSR 96-8p. See SSR 96-8P, 1996 WL 374184, *5 (July 2, 1996) (stating residual functional capacity must be based on all relevant evidence including, among other things, medical history and signs,

-16-

the effects of treatment, the limitations or restrictions resulting from the treatment such as side effects of medication, reports of daily activities, recorded observations, medical source statements, and effects of symptoms, including pain).

The law judge also considered the opinion evidence. Thus, he considered the residual functional capacity opinions of the nonexamining, state agency doctors from 2015, the physical restrictions identified by Dr. Osvanny Nodal and Dr. Jose F. Garcia-Troncoso after evaluating the plaintiff in 2017, and Dr. O'Donnell's statement in June 2013. Dr. P.S. Krishnamurthy and Dr. Ronald Kline opined that the plaintiff retained the residual functional capacity to perform a restricted range of sedentary work (see Tr. 95-98, 107-09).[4] The law judge gave "significant weight" to their opinions (Tr. 18). Dr. Nodal and Dr. Garcia-Troncoso restricted the plaintiff to "[n]o lifting from the waist greater than 15 pounds. No excessive stooping, squatting, bending, kneeling or twisting. No lifting over the shoulders greater than 10 pounds." (Tr. 411, 428, 437). The law judge gave "considerable weight" to their opinions (Tr. 19). Lastly, the law judge gave "little weight"

---

[4]Dr. Krishnamurthy opined that the plaintiff could lift/carry ten pounds, sit for six hours, stand/walk for two hours, frequently climb ladders/ropes/scaffolds, and frequently balance/stoop/crawl, and was to avoid concentrated exposure to vibrations and hazards (Tr. 95). Dr. Kline opined that the plaintiff could lift/carry ten pounds, sit for six hours, stand/walk for three hours, occasionally climb ramps/stairs, occasionally stoop/crouch/crawl, and never climb ladders/ropes/scaffolds (Tr. 107-08).

to Dr. O'Donnell's opinion that the plaintiff was unable to return to work at present due to neck and bilateral arm pain (Tr. 19, 317). Significantly, the plaintiff does not assert a discrete, cogent challenge to any of these assessments of her residual functional capacity, which, in itself, is substantial evidence supporting the law judge's determination of the plaintiff's residual functional capacity.

Rather, the plaintiff complains about the manner in which the law judge addressed the medical records dated 2013-2017 from Trinity Spine Center (Doc., pp. 12-13).[5] Those treatment records make up the bulk of the medical evidence in this case. As the plaintiff notes, the law judge summarized those records by reference to exhibit numbers instead of summarizing the treatment and findings of each physician individually and by name:

> The claimant sought treatment at Trinity Spine Center in 2013-2017 with complaints of back and neck pain. On physical examination, the doctors reported tenderness in the cervical and lumbosacral spine, but further indicated normal gait, negative straight leg raising, full muscle strength, and normal sensory findings. The doctors prescribed narcotic pain medications and injections (Exhibits 1F-4F, 8F, and 11F).

---

[5]To the extent the plaintiff contends the law judge did not adequately address the various MRI studies of her lumbar spine, cervical spine, and right knee, the decision reveals otherwise (see Tr. 16). While the law judge did not specifically address the cervical spine MRI taken in October 2016, he addressed the one taken only a few months later.

(Tr. 15). The law judge noted that the treating doctors also documented reduced range of motion and tender points in the plaintiff's spine (Tr. 17).

Although the law judge's discussion of this evidence was rather summary, it is sufficient to allow the court to determine the medical evidence he relied on and the rationale behind his decision. The law judge credited the plaintiff with significant severe impairments of the cervical and lumbar spine and assessed a restrictive residual functional capacity (Tr. 15-16). While the plaintiff contends that the findings of the various doctors and the findings on MRI support her claim of disability and undercut the law judge's residual functional capacity determination, such findings, even when suggestive of significant limitations, do not translate into functional limitations. See Longworth v. Commissioner of Social Security, 402 F.3d 591, 596 (6th Cir. 2005) (physician needs to translate how abnormal clinical findings affect functioning). It is the plaintiff's burden to prove disability, and, unfortunately for the plaintiff, not one of her treating doctors from Trinity Spine Center provided an opinion on her functional capacity.

Furthermore, as the plaintiff recognizes (Doc. 16, p. 12), a law judge is not required to "'specifically refer to every piece of evidence in his decision,' so long as the decision is sufficient to allow [the court] to conclude that [he] considered the claimant's medical condition as a whole." Ogranaja

v. Commissioner of Social Security, 186 Fed. Appx. 848, 851 (11th Cir. 2006), quoting Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005). This principle applies to the law judge's discussion of opinion evidence. See Newberry v. Commissioner, Social Security Administration, 572 Fed. Appx. 671, 672 (11th Cir. 2014); Adams v. Commissioner, Social Security Administration, 586 Fed. Appx. 531, 534 (11th Cir. 2014). In this case, the law judge's discussion of the evidence is sufficient to allow the court to conclude that he considered her conditions as a whole.

Moreover, even assuming, for argument's sake, that the law judge's failure to discuss the medical evidence in greater depth was an error, the error is harmless because the plaintiff has not identified anything in the medical record that rendered her more limited than found by the law judge. See Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983) (the decision is affirmed when correction of an error would not change the law judge's ultimate finding); Burgos v. Acting Commissioner of Social Security, 705 Fed. Appx. 794, 801 (11th Cir. 2017) (An error is harmless when the correction of an error would not change the law judge's ultimate finding.).

In sum, substantial evidence supports the law judge's determination of the plaintiff's residual functional capacity, and the plaintiff fails to identify any other limitations that the law judge should have, but did

not, include in the residual functional capacity. She also fails to acknowledge, let alone challenge, the medical opinions on which the law judge relied in assessing her residual functional capacity. Although the plaintiff has been diagnosed with several health problems, she has not proven that her impairments compelled the law judge to include any additional restrictions in her already limited residual functional capacity. See Adefemi v. Ashcroft, supra, 386 F.3d at 1027 ("findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings"); Phillips v. Barnhart, supra, 357 F.3d at 1244 n.8 ("We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner."); Buttram v. Social Security Administration, Commissioner, 594 Fed. Appx. 569, 572 (11th Cir. 2014) (the court "must uphold the Commissioner's determination even if a preponderance of evidence supports a contrary finding so long as sufficient evidence remains for a reasonable person to reach the Commissioner's conclusion").

IV.

For the foregoing reasons, I recommend that the decision be affirmed, and the case closed.

-21-

Respectfully submitted,

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED:  AUGUST  2△, 2019

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. 11th Cir. R. 3-1.